My name is Tom Wilka. I'm from Sioux Falls, South Dakota, and I represent Leslie Torgerson in this case against Roberts County, the Sheriff, three deputies, and two individuals, the individuals being his ex-wife and his adoptive son. The district court opinion makes a number of claims that are just not correct. The district court said we asked the court to overrule a decision of the Roberts County State's Attorney to not file criminal charges. We did not do that. There is no place in our complaint, there is no place in any of our briefs where we asked the district judge to overrule the State's Attorney. We may have criticized him, but that's a lot different. We're free to criticize public officials. The district court said we were asking him to overrule the circuit judge's protection order. We did not. At no time did we do that in the complaint or in any of the briefings. In fact, the protection order could have been appealed within 30 days. It wasn't. By the time I met Mr. Torgerson, it was several months later, the time for appeal was long gone. An appeal might have been successful because the court did not enter findings to factor in conclusions of law, but that ship had sailed. The district court asked us to overrule the tribal court's divorce decisions, both regarding jurisdiction and the property division in a judgment decree of divorce. We never did that. At no time did we ask the district court to overrule the tribal judge. We pointed out that that issue was on appeal with the South Dakota Supreme Court, as did counsel for the defendants. Everybody in their briefs pointed that out, and it was on appeal at that time. The South Dakota Supreme Court issued its decision two days after we filed our reply brief, I think just a coincidence, and ruled for us. It said that the circuit court should not have acknowledged the tribal judge's orders on the basis of comity because the circuit court, on the motion to dismiss Mr. Torgerson's state court divorce action, did not address any of the comity factors in SDCL 1125. So that case is now back in circuit court, and we're litigating a divorce and a property division. We made points about those things, particularly the tribal rulings, because that was relevant to our damages at that time. To digress a bit, at one point in his deposition, Mr. Torgerson was asked how he was damaged, and his reply was, I lost everything. Well, that's no longer the case. It doesn't mean it's moved, because there was expense in pursuing and winning that appeal. But the fact of the matter is, the landscape has somewhat changed in terms of what his damages are, but we, at no time, ask the district court to do those things. So what are you seeking here? Pardon me? What are you seeking here? What remedy are you seeking before this court? To remand the case for trial. We are not asking for a remand to consider... On what issue? On the issues of the constitutional violations... Due process. Due process, both procedural and substantive. And along with it, to instruct the district court to consider the state court causes of action, which when he dismissed all the federal causes of action, he dismissed. The reason we're not asking this court to remand for consideration of the qualified immunity issues, which the judge did not even address in his memorandum opinion, is because, first of all, those were fully briefed at the district court level. Our briefs are not in the appendix, but they're in the record. And we believe that qualified immunity does not apply in this case. If it's remanded... Well, but it's never been decided in this case, right? I mean, what the judge decided is you had no cognizable federal claims, and the dependent state claims should be returned to the state courts, right? Yes, that's what we decided. And so qualified immunity cannot be before us. It's never been litigated below and decided below. And we do not, you know, decide qualified... I don't think we historically decide qualified immunity cases without there being a decision below. So if we remand it, doesn't the trial... Doesn't Judge Kornman, if he's still the judge on the case, have to decide those qualified immunity questions? I mean, because the real thing is we've got to resurrect one of your constitutional claims, right? Yes. Or the case dies. So if we resurrected the qualified immunity case not having been decided, doesn't he get to go back to the district court, and then you litigate it and say, okay, judge, you got the existence of this federal claim wrong, so you've got to decide qualified immunity now. I believe there is sufficient evidence in the record for this court to decide the qualified immunity issues without remanding it to Judge Kornman. Do you have a case where we've done that? No, I do not, Your Honor. Well, let's take the claims then kind of one by one because I'm just a little bit confused about the footing of where we are. Have you abandoned the Fifth Amendment claim because there are no federal defendants before the court? And I wasn't intending to allege an independent Fifth Amendment claim. I put the Fifth Amendment in the complaint because it's always been my understanding for people... The incorporation, 5th and 14th, is that kind of your argument? The 14th Amendment incorporated the Fifth Amendment due process rights and made them applicable to the states. I've understood that since law school, but... Okay. The procedural due process relates to the protection order proceeding. One of the big issues there is that the false police report was the only exhibit which Terry Torgerson admitted. The judge apparently relied on it and that report was entirely inaccurate. It neglected the mention of Les Torgerson's injuries and the photos are in the record and he was bloodied. He was beaten to a pulp. And the report says he fell backwards and hit the back of his head. There's nothing to support that. It does not mention that Ross Torgerson blew a .019. It is entirely deficient and is so deficient as to be dishonest. That's also a basis for the substantive due process claim based on a liberty interest. The county, in its brief, argues or implies that in order to have a liberty interest violation, you have to be incarcerated or arrested. That is not true. Usually it has to tie to some criminal proceeding, right? Do we have a civil case where we have found a liberty interest for a failure to investigate that is not in a criminal context? Yes, you do, and it was one of mine. Mogard v. City of Milbank, which you decided in 2019. There was no criminal prosecution in that case. That was not a failure to investigate property, but it was a liberty interest case because his good name was defamed. You reversed Judge Kornman, who ruled for us in that one, because one of the elements of that was missing, not because the liberty interest didn't exist under those circumstances. I would like to reserve the rest of my time for rebuttal. Thank you, Mr. Wilk. I apologize for getting your name incorrect when I introduced you. I don't see Mogard v. City of Milbank in your brief, and maybe I just missed it. Could you do a 28-J citation and just give us the citation for that after the argument, please? After the argument? Yes, I will. It's not included in the brief. Thank you. Mr. Vogel? May it please the Court, I'm Ryan Vogel, and I represent the appellees Roberts County, Tyler Apple, Zachary Angerhofer, and Wesley Bousher. The overarching issue, which was decided by the district court, is whether there was a federal right violated. And our position is that Judge Kornman and the district court decided that correctly. For all the claims that are brought against the Roberts defendants, as I'll refer to them today, we have the substantive due process claim. The 14th Amendment claims, which is substantive due process, procedural due process. There's a civil conspiracy claim, and also the Monell claims against the individuals in their official capacities, as well as against Roberts County itself. I think Judge Erickson hit it right on the head from my standpoint in that when there's a failure to investigate under a substantive due process claim, there needs to be some sort of liberty withheld. And in this case, the claims that are being brought are this failure to investigate. It was done recklessly and so forth. And when we look at the claims under the substantive due process, number one, there has to be a right violated. And in violating that right, it has to shock the conscience. It has to be so extreme and egregious, inspired by malice or sadism, that it almost amounts to a brutal or inhumane abuse of official power, which literally shocks the conscience. Here what we have is a plaintiff complaining that someone else wasn't investigated good enough, meaning one of the other defendants for potential criminal prosecution or for a DUI or some sort of domestic abuse. We don't have that here. We don't have that level of shocking the conscience. Moving on to the procedural due process claim, again, we have to have a violation of a constitutional right. And our position is that Judge Kornman decided that correctly. Again, there was no violation of a right to liberty or property, et cetera, based on this investigation. And moving a step farther, with procedural due process, there needs to be a pre-deprivation hearing. There was one. The plaintiff takes issue with how the protection order hearing was handled. Well, he had every opportunity to present whatever he saw fit at that hearing. That's established in the record. Just because it wasn't presented or a report that was drafted by one of the officers that I represent was presented, that doesn't meet procedural due process violation requirements. And moving on to civil conspiracy, again, there are several elements to this, and I'm not going to go through all of them. But a big one is, again, when there's disagreement or meeting of minds among parties, then there has to be a deprivation of a constitutional right by these parties and an overact and furtherance of it that actually deprives you of a right. Not an agreement that we're going to deprive you of a right. There has to be an agreement with an overt act that actually deprives you of this right that causes an injury. We don't have that here again. And it all ties back to the constitutional right. And finally, well, not finally, but second to last, the Monell claims, as we've briefed, with the individual deputies and the sheriff, those are actually claims against Roberts County itself. Again, there needs to be a violation of a constitutional right. If there is one, move on. Was that due to an official policy, custom, or practice? And that official policy, custom, or practice has to be persistent, widespread pattern of unconstitutional conduct with notice to the individuals for them to react with deliberate indifference. We have none of that here, you know, if we even move on from the constitutional right. And I see that my time is up. Thank you. Thank you, Mr. Vogel. Mr. Gehr. May it please the Court. Your Honors, my name is David Gehr, and I represent the Apple League, Terry Torgerson. In this case, the allegations with Terry Torgerson involving the violation of constitutional rights tie in with the conspiracy claim. And the problem with that is, and what we're asking for in this case is that this panel affirm Judge Corman and his motion for summary judgment. We believe that was appropriate based upon no constitutional right being violated and the finding of no meeting of the minds to support a conspiracy claim. And let's look at Terry's involvement with Ms. Torgerson. There was a family meeting regarding two issues. One is the Taco John's family business. The other one was allegations of Mr. Torgerson's infidelity. During that conversation at the family home, there was an altercation between Les and Ross. Ms. Torgerson, my client, said, stop it or I'm going to call law enforcement, which she did. She called law enforcement. Law enforcement showed up. She gave her version or her recollection of what happened. So did Ross. So did Mr. Torgerson. Based upon that, the law enforcement on their own, because you can see it with the video, met by themselves and determined that there was a probable cause for an arrest. What happened then was, is Mr. Torgerson was allowed to leave. He left. This allegation that there was an improper investigation, it just doesn't hold water. The law enforcement, you can see the best evidence is the video. And it clearly shows what happened. And that is, Mr. Torgerson did not want anybody prosecuted. He didn't want to seek retaliation. That was his final position, right? Correct, 100%. Proceed. Yep. And then he wanted to leave and go to Fargo. All those things happened. He wasn't arrested. He wasn't restrained. None of that happened. In fact, the only restraint that really happened was the EMT showed up at the call from law enforcement. They wanted him to get checked out, and he reluctantly did, and then left and went to Fargo on his own volition. That's what happened. And nothing got shoved under the rug here. What the deputies decided to do on their own, without any involvement from Terry or Ross, is that they submitted it to the state's attorney's office so the state's attorney could make a determination on whether or not somebody should be arrested. The state's attorney did not. The only other action Terry ever had was she filed a protection order against Mr. Torgerson and then ultimately filed a divorce in tribal court. Mr. Torgerson then filed a divorce in state court, and that's still proceeding. With regard to the protection order, counsel for Ms. Torgerson, at the proceeding, offered the police report. It was accepted without objection from Mr. Torgerson. He appeared pro se after having proper notice. And he also, prior to that hearing on the protection order, contacted the state's attorney. The state's attorney's office didn't stonewall Mr. Torgerson. They actually gave him a copy of the videos, which he now says is the best evidence in this case, but yet he didn't even provide it at the protection order. So, I mean, all of these matters, nothing was hid, there's no conspiracy, and there's nothing that ties Terry Torgerson to law enforcement for any kind of conspiracy whatsoever. All she did was, she was in an abusive relationship, there was an incident at the house, she called law enforcement, the home life did not get better, so she filed a protection order to protect herself and then filed for divorce. That's it. Nothing more and nothing less. There's nothing in the record that shows that she talked to law enforcement other than giving her side of the events when they showed up, or that she talked to anybody else and conspired to do anything. There is no constitutional right, because there was no liberty interest taken of Les Torgerson. That's my time. Thank you. Thank you, Mr. Gehry. Mr. Cook. Thank you, Your Honors. Good morning, and may it please the Court, Counsel. I'm Scott Cook. I am Ross Torgerson's attorney. I have been writing the coattails of Mr. Vogel and Mr. Gehry throughout this process, and I continue to do so. I agree fully with the arguments that they've made here today. One thing that I want to do is address what Mr. Wilka started off with, and that's to state that they did not ask the district court to do all these things in their pleadings. I agree with that. Literally they did not ask him to do that. But throughout the process and what Mr. Wilka has been arguing here with the constitutional rights that he claims have been violated and so forth, he has, in fact, asked the district court to change the rulings that have been made under the lesser courts there in South Dakota in a decision made by the state's attorney not to prosecute either Ross or Les Torgerson. As Mr. Gehry just stated, the facts of this are pretty straightforward. You can see the video speaks for itself. With regard to my client, his interaction here simply was, unfortunately, that he got into this altercation with his adoptive father, Les Torgerson, on the night in question. There's clear evidence in the past of an abusive relationship between Les and Terry, who is Ross' mother. Ross stepped in and protected himself and Terry on that night from an abusive action by Les. Unfortunately, it led to an altercation whereby law enforcement was called. But the police showed up. They did their job. Thereafter, Ross' only involvement was that he was a witness for Terry in the protection order hearing, and that's it. He didn't have anything to do with the divorce. He wasn't part of that other than being the adult child of Terry and the adopted child of Les. That's his only involvement. So my time is going to end here. I don't believe that Mr. Wilka and his client have produced anything here other than that this court should affirm what happened in the district court and would ask you to do so. Thank you. Thank you, counsel. Mr. Wilka, your rebuttal. I certainly disagree with Mr. Cook's comments that, in effect, we were asking the district judge to do that. The officers, first of all, the report was in violation of SDCL 251036, which says that they need to explain if they arrested somebody on a domestic call or if they did not. It actually says they must arrest the perpetrator of the domestic abuse. They didn't do that. I want to step back. I mean, I understand where you're getting there, but I'm still confused. Like the Moberg case apparently was an employment discrimination case, right? An employee was terminated. There were some First Amendment claims related to that. There was a First Amendment. Yeah, well, there was two claims, right? And the court disposed of the employment discrimination claim. They said there's no liberty interest or property interest in continued employment if you're an at-will employee, right? And then the second thing, you know, I read the opinion. And the second thing that it said was that there is no liberty interest generally unless there's a willful termination that includes a willful attempt to destroy the reputation of the person who's terminated. Now, that doesn't look a lot like an investigation where you've got prosecutorial immunity that's floating around in that case. You've got the investigators' discretionary acts that are floating around. And the qualified immunity issue's never been decided. And so my issue really is this, is that how do we get to a liberty interest in these cases based on just what is really a claim of investigation negligence? Well, you've already decided a case like Wilson v. Lawrence County, which was about 2002, where the investigation was so bad that you found a liberty interest violation. But that's a criminal investigation. It was. And what happens here is there's an investigation that arrives at the conclusion that no crime is going to be prosecuted, period, end of interest. In spite of the statute. And furthermore, certainly in Wilson, the circumstances were much more extreme. But the result here was still a deprivation of a constitutional right, namely a 14th Amendment right to procedural due process and substantive due process. And the conspiracy, contrary to Mr. Vogel's argument, included the sheriff's refusal to serve the state court divorce papers. Their excuse was the deputies couldn't find Terry Torgerson. This is a town of 2,000 people. Ross was the sheriff's best friend since ninth grade. They lived in the same house the entire time. And they said, well, she was babysitting at Ross's. She testified otherwise. And so we think, and it's a factual dispute, intentional refusal to serve the state court divorce papers until on January 10 the tribal judge had decided it had jurisdiction. The other thing is the county policy was deficient because it failed. They did not have a policy as required by SDCL 23-3-38.8, which has been on the book since 1994, which requires a county to have a domestic abuse policy. The sheriff's department adopted it in 2023, almost two years after this event. And I know that they cited SABLA, and the St. Louis case for lack of policies is not itself a constitutional violation. But I submit that it's a different case when there's a specific statute that's been in the books for decades that the sheriff ignored and did not adopt that policy. And that led to the fact, because one of the criteria, or the things that a law enforcement agency has to adopt as part of its policy, is incident report writing. And we end up with this report that is written so badly as to be dishonest. And I don't think that the liberty interest cases require that there be a criminal prosecution. And in one of the cases cited by the county, Moran v. Clark, at footnote 5, this court lists a variety of cases that implicated constitutional liberty interests, none of which had anything to do with criminal prosecutions. Loving v. Virginia, or that wasn't from this case, that was a Supreme Court case. The right to marry, the right to raise your kids as you see fit. All these different things. There was about five different cases in that footnote. And all of those involved a liberty interest, and none of them involved a criminal prosecution. Certainly not, well, Loving v. Virginia. How would you describe the liberty interest that you assert here? What is its nature? The interest in having an officer's investigation that is not dishonest or reckless. And that is a liberty interest. And your opinion in Wilson v. Lawrence County says that. Now, when they talk about there's no evidence of a conspiracy, there doesn't have to be evidence of people actually talking to each other. In fact, your opinion in Livers v. Schenck says that most of the time, these civil conspiracies are the product of or are shown by circumstantial evidence. And here we have the circumstantial evidence that raises these questions of fact. For example, did the sheriff intentionally not serve the state court divorce papers for three months in order to allow Terry to have her disposition in tribal court? Well, a jury could decide that in the affirmative. We also have the disputed issues of fact about the investigation and how badly and dishonestly Deputy Engelhofer's report was written by omitting the facts. There is such a thing as fraud by omission. Mr. Wilson, you've exhausted your time. And probably more. Thank you, Your Honor. You're welcome. Thank you. Court, thanks to all counsel for participating in argument before the court, helping illuminate the briefing, which we've been studying. We'll continue to study the case and render decision in due course. Thank you.